# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH L. STANSBERY, | Case No.  1:11-cv-01605-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| J. BENAK, et al., | [ECF No. 41] |
| Defendants. | OBJECTION DEADLINE: THIRTY DAYS |
| _____/ | |

## I.      Background

Plaintiff Kenneth L. Stansbery ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action in Tuolumne County Superior Court on July 26, 2011.   Defendant Cate removed this action on September 20, 2011, pursuant to 28 U.S.C. § 1441(a), as this Court has original jurisdiction under 28 U.S.C. § 1331.  The other Defendants joined in the removal on October 13, 2011.  The action is proceeding on Plaintiff's First Amended Complaint filed on August 17, 2012, against Defendant Benak for acting with deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution.

On March 13, 2014, Defendant filed a motion for summary judgment.  (ECF No. 41.) Four months later on July 2, 2014, without having been granted an extension of time, Plaintiff filed an opposition. (ECF No. 46.)  Defendant filed a reply on July 3, 2014. (ECF No. 47).  This

1   motion has been submitted upon the record without oral argument.[1]   Local Rule 230(*l*).  For the

2   reasons set forth below, the Court recommends that Defendant's motion be granted on the ground

3   that he did not act with deliberate indifference against Plaintiff.

4   **II.      Legal Standard**

5           Any party may move for summary judgment, and the Court shall grant summary judgment

6   if the movant shows that there is no genuine dispute as to any material fact and the movant is

7   entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a) (quotation marks omitted);

8   Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).   Each party's position,

9   whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

10  parts of materials in the record, including but not limited to depositions, documents, declarations,

11  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

12  genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

13  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other materials in the

14  record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen

15  v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v.

16  Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

17          Defendant does not bear the burden of proof at trial and in moving for summary judgment,

18  he need only prove an absence of evidence to support Plaintiff's case.   In re Oracle Corp.

19  Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S.

20  317, 323, 106 S.Ct. 2548 (1986)).   If Defendant meets his initial burden, the burden then shifts to

21  Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."   In re

22  Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).   This requires Plaintiff to

23  "show more than the mere existence of a scintilla of evidence."   Id. (citing Anderson v. Liberty

24  Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

25          However, in judging the evidence at the summary judgment stage, the Court may not make

26

27  [1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154

28  F.3d 952, 960-61 (9th Cir. 1998).

1   credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509

2   F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

3   inferences in the light most favorable to the nonmoving party and determine whether a genuine

4   issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v.</u>

5   <u>City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

6   *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue

7   for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

8   prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

9   omitted).

10  **III.   Plaintiff's Claim**[2]

11       Plaintiff is incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California,

12  where the events giving rise to this action occurred.

13       Plaintiff alleges the following. On December 16, 2009, Plaintiff met with Defendant J.

14  Benak.  Defendant Benak discontinued his prescription for Zovirax.  Plaintiff told Defendant

15  Benak that he had been on this medication for three years and without the medication he would

16  break out in lesions that cause pain and discomfort.  Plaintiff informed Defendant Benak that he

17  had previously been taken off the medication and that he had broken out in lesions, all of which

18  was recorded in his medical file.  Defendant Benak did not review the files, finding that the

19  medication was not medically noted and taking Plaintiff off the medication.

20       On January 12, 2010, Defendant Bangi evaluated Plaintiff. Defendant Bangi re-prescribed

21  Zovirax. Defendant Bangi however did not document lesions and sores.

22       On January 28, 2010, and February 28, 2010, Plaintiff was seen by Defendant Muehldorf.

23  Defendant Muehldorf examined Plaintiff, but failed to document any sores or lesions. Defendant

24  Muehldorf prescribed rinsing Plaintiff's mouth with salt water, to which Plaintiff did not have

25

26  [2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal
    knowledge of facts admissible in evidence.  <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004).   The
27  summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations
    are admissible.

28

1   access.

2         On February 9, 2010, Plaintiff was again seen by Defendant Bangi, who prescribed

3   medication. On February 12, 2010, Plaintiff signed for and received a 30-day supply of Zovirax.

4   On March 13, 2010, Plaintiff ran out of medication. Defendant Bangi prescribed Famvir, for seven

5   days. Plaintiff found that using Famvir was more effective for treatment of Plaintiff's lesions and

6   sores in his mouth. On April 23, 2010, Plaintiff received a prescription for Acyclovir for 90 days.

7   Plaintiff filed an appeal complaining of improper medical care and was seen by Defendant Curtis

8   Allen, acting as Chief Medical Officer on July 13, 2010. Plaintiff complained about why it took so

9   long for Plaintiff to receive his medication. Defendant Allen told Plaintiff that it was an

10  unfortunate delay. Defendant Allen also suggested that Defendant Benak had caused unnecessary

11  harm. Defendant Jack St. Clair answered Plaintiff's appeals, but denied that Plaintiff had suffered

12  harm.

13        Plaintiff alleges deliberate indifference to a serious medical need in violation of the Eighth

14  Amendment. Plaintiff requests as relief monetary damages.

15  **IV.      Undisputed Facts**

16  1.      In October of 2006, Plaintiff was diagnosed with the Herpes Simplex Virus (HSV).

17  Medical staff educated Plaintiff on the disease, but Plaintiff was not prescribed any medication.

18  2.      On December 15, 2006, Plaintiff complained of a lesion near his penis shaft, and he was

19  prescribed 600 mg of Acyclovir five times a day for a week.  This prescription was consistent with

20  the treatment for a herpes-related outbreak.

21  3.      On January 29, 2007, Plaintiff complained of an outbreak, and medical staff noted that he

22  had a red rash about two inches long on his right buttocks.  Staff placed him on another week-long

23  regimen of Acyclovir.

24  4.      In February of 2007, Plaintiff complained of another herpes outbreak, but no mention is

25  made in the records of the appearance of the skin, the location of the outbreak, or the severity of

26  the symptoms.  Staff prescribed Plaintiff Acyclovir for a week.

27  5.      On March 4, 2007, Plaintiff complained of another rash, but subsequently denied having

28  an outbreak.  Staff noted that he wanted the medication just in case he had an outbreak.  Staff

4

1   counseled and informed Plaintiff that he would not receive Acyclovir until he had an outbreak.

2   6.      On March 11, 2007, Plaintiff complained of a severe rash.  Four days later, he was seen by

3   medical staff who did not indicate seeing any rash or sores on him.  The Progress Note indicated

4   that Plaintiff had stated that he had had five outbreaks in the past month or months.  Plaintiff was

5   prescribed 400mg of Acyclovir twice a day and started on suppressive therapy.

6   7.      On July 5, 2007, Plaintiff was seen by Dr. Bal.  The records do not show that she

7   discontinued the Acyclovir; however, she did not renew the prescription.

8   8.      On July 17, 2007, Plaintiff submitted a healthcare request form asking that his Acyclovir

9   be renewed.  A nurse responded to his request, noted that Plaintiff did not have active lesions, and

10  explained that Dr. Bal did not renew his prescription because of the toxic effects of the drug.

11  9.      On July 29, 2007, Plaintiff complained of having lesions or sores.  The nurse examined

12  him and noted he had red inflamed skin in the buttocks area.  He was prescribed Acyclovir and

13  placed back on suppressive therapy.  The prescription was renewed on October 22, 2007, and

14  December 14, 2007.

15  10.     On November 25, 2009, Plaintiff was transferred to Sierra Conservation Center (SCC).

16  11.     Defendant Benak was a Physician's Assistant at SCC, and he provided primary medical

17  care and treatment to the inmates, conducted physical examinations, prescribed medication,

18  interpreted test results, and provided educational and preventative information to the inmates.

19  12.     On December 16, 2009, Defendant Benak met with Plaintiff because Plaintiff was a new

20  arrival at SCC, and Defendant Benak had to assess his medical conditions and eligibility for camp

21  and other programs at the prison.

22  13.     Benak's customary practice when assessing a new arrival at SCC was to review the

23  medical file before meeting with the patient in order to familiarize himself with the patient's

24  medical history.  Defendant Benak had the medical file present while he met with Plaintiff on

25  December 16, 2009.

26  14.     Defendant Benak listed and went over Plaintiff's numerous conditions and the medications

27  he was taking. Defendant Benak asked Plaintiff about his medical and treatment history.  Based on

28  the information in the medical records and the information Plaintiff provided, Defendant Benak

1  developed a plan for further assessment and treatment of Plaintiff's conditions, as well as

2  determining Plaintiff's eligibility or exclusion from certain prison programs. Defendant Benak

3  adjusted Plaintiff's medications, ordered bloodwork, and scheduled him for a follow-up

4  appointment.

5  15.     During the December 16, 2009 meeting, the medical records showed, and Plaintiff

6  informed Defendant Benak, that Plaintiff had HSV.  Plaintiff was taking 400 mg of Zovirax (also

7  known as Acyclovir) twice a day as suppression therapy. Based on Defendant Benak's review of

8  Plaintiff's medical records, Defendant Benak discontinued Plaintiff's prescription for Acyclovir

9  because Defendant Benak did not believe the medication was medically necessary.

10  16.     Defendant Benak did not see Plaintiff again after December 16, 2009.

11  17.     On December 22, 2009, and March 17, 2010, Defendant Benak scheduled Plaintiff for an

12  appointment with medical staff to discuss his lab results, but did not provide direct medical care to

13  Plaintiff.

14  18.     When Defendant Benak discontinued Plaintiff's Acyclovir prescription, Plaintiff still had

15  some medication in his possession that had been prescribed to him before he was transferred to

16  SCC.

17  19.     On January 12, 2010, Plaintiff saw Dr. Bangi for a chronic-care evaluation. During the

18  encounter, Plaintiff informed Dr. Bangi that Defendant Benak had discontinued his Acyclovir. Dr.

19  Bangi renewed Plaintiff's prescription and ordered that Plaintiff receive 200 mg of Acyclovir

20  twice a day.

21  20.     At the time Plaintiff met with Dr. Bangi on January 12, 2010, Plaintiff did not have any

22  HSV-related sores.

23  21.     On the evening of January 12, 2010, Plaintiff went to the pill line to see if his Acyclovir

24  prescription was ready, and he was informed that it would not be ready for a couple of days.

25  22.     Around January 16-17, 2010, Plaintiff started complaining about having painful sores in

26  his mouth.  The open sores caused Plaintiff pain while eating and while brushing his teeth.

27  23.     On January 22, 2010, Dr. Bangi issued Plaintiff another prescription for Acyclovir because

28  the prison pharmacy did not have the dosage the doctor ordered.

1   24.     By the end of January 2010, Plaintiff still had not received his medication due to the prison

2   pharmacy either being out of Acyclovir or there was confusion about dosage that was available.

3   25.     On February 9, 2010, Dr. Bangi issued another Acyclovir prescription for Plaintiff and

4   ordered that it be delivered to Plaintiff by no later than the next day.

5   26.     By the time Plaintiff received his medication, he had three sores in his mouth ranging in

6   size from a bean to a quarter. Plaintiff estimated he had to wait two to three weeks from the onset

7   of his symptoms to the time he received his medication.

8   27.     As a Physician's Assistant, Defendant Benak was not responsible for, or involved with,

9   ordering, stocking, or inventorying the pharmaceutical supplies for the prison or the yard clinics.

10  28.     After December 16, 2009, Plaintiff did not inform Defendant Benak, and Defendant Benak

11  was unaware, that Plaintiff developed sores or any other HSV-related symptoms, and Plaintiff

12  never informed Defendant Benak that he was having difficulty receiving his Acyclovir that Dr.

13  Bangi prescribed him on January 12, 2010.

14  30.     Defendant Benak did not discontinue Plaintiff's medication to cause him pain or to

15  provoke a herpes outbreak, and Defendant Benak did not ignore Plaintiff's serious medical needs.

16  31.     On December 16, 2009, Defendant Benak saw no medical reason to conclude that Plaintiff

17  needed antiviral medication or suppressive therapy given Plaintiff's scant history of HSV-related

18  outbreaks.

19  **V.      Discussion**

20          **A.      Deliberate Indifference**

21               1.    Legal Standard

22          The Eighth Amendment's prohibition against cruel and unusual punishment protects

23  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

24  confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

25  Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347,

26  101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and

27  often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of

28  pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

7

1    Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

2    clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th

3    Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains

4    while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks

5    omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to

6    a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v.

7    Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir.

8    2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128

9    (9th Cir. 1998).

10    For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical

11    need by demonstrating that failure to treat [his] condition could result in further significant injury

12    or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the

13    need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012)

14    (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Defendant does not dispute that

15    Plaintiff's HSV is a serious medical condition.  Therefore, the Court's focus is limited to whether

16    Defendant acted with deliberate indifference to Plaintiff's HSV condition.

17    Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

18    prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680

19    F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective

20    recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d

21    978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

22    2.    Analysis – Purposeful Act/Failure to Respond

23    Plaintiff's claim against Defendant Benak arises out of Plaintiff's disagreement with the

24    course of treatment prescribed by Defendant to address Plaintiff's HSV.  A mere difference of

25    opinion between Plaintiff and Defendant regarding medical treatment does not give rise to a claim

26    under section 1983.  Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v.

27    Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show that the course of

28    treatment chosen was medically unacceptable under the circumstances and that it was chosen in

1   conscious disregard of an excessive risk to Plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330,

2   332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88.

3          Plaintiff has a history of HSV dating back to his initial diagnosis in October of 2006.

4   Since that time, Plaintiff has suffered from several outbreaks.  On December 16, 2009, Defendant

5   Benak met with Plaintiff and discussed his medical history and medications.  Defendant Benak

6   was aware of Plaintiff's HSV.  Plaintiff states he advised Defendant Benak that the last time he

7   was taken off Acyclovir, he experienced an outbreak.  Nevertheless, Defendant Benak noted that

8   Plaintiff had three occurrences over a five month period, and with the exception of the lesion on

9   the penis, the symptoms were not severe.  Defendant Benak determined that the outbreaks did not

10  meet the frequency requirement to merit suppressive therapy.  In addition, in Defendant's opinion

11  the dosage of 800 mg per day was excessive, and Defendant Benak was concerned about the effect

12  such large quantities had on Plaintiff's liver since Plaintiff suffered from liver disease.

13         Plaintiff raises no triable issues of fact regarding the appropriateness of Defendant's

14  chosen course of treatment for Plaintiff's HSV.  See Snow, 681 F.3d at 987 (citing Sanchez v.

15  Vild, 891 F.2d 240, 242 (9th Cir. 1989)) (difference of opinion between medical professionals

16  does not amount to deliberate indifference).  Accepting as true that Plaintiff advised Defendant

17  Benak that he had suffered an outbreak when taken off Acyclovir before, but Defendant

18  determined that suppressive therapy was not medically indicated based on Plaintiff's medical

19  history, Plaintiff's disagreement with Defendant over the method of treatment is insufficient to

20  create a triable issue of fact regarding whether Defendant's actions rose to the level of deliberate

21  indifference.  See Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon,

22  662 F.2d 1337, 1344 (9th Cir. 1981).  Defendant has met his burden of setting forth evidence

23  demonstrating that the course of treatment he chose was medically acceptable under the

24  circumstances, which shifts the burden to Plaintiff to submit admissible evidence showing that the

25  course of treatment chosen by Defendant was medically unacceptable and that it was chosen in

26  conscious disregard of an excessive risk to Plaintiff's health.  Plaintiff has not done so.

27         As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have

28  continued Plaintiff's suppressive therapy, and that Defendant's failure to do so was in

9

1    contravention of acceptable medical standards.  Fed. R. Evid. 701, 702.

2            3.        Analysis – Causation

3            In addition, Plaintiff cannot demonstrate that he suffered harm as a result of Defendant

4    Benak's actions.

5            Plaintiff did not have an outbreak immediately after Defendant Benak discontinued

6    suppressive therapy.  In fact, when he met with Dr. Bangi on January 12, 2010, he was not

7    suffering HSV symptoms, and he had not suffered an outbreak between the date Defendant Benak

8    discontinued suppressive therapy and the date he met with Dr. Bangi.  At that time, Dr. Bangi

9    renewed his suppressive therapy prescription for Acyclovir.  But when Plaintiff reported to the pill

10   line, it was not available at the prison pharmacy.  Plaintiff was unable to obtain his medication for

11   over a week because the prison pharmacy ran out of the drug, or because there was confusion over

12   the dosage Dr. Bangi ordered.  Plaintiff began experiencing an outbreak on January 16-17.  This

13   was after Dr. Bangi had prescribed Acyclovir.  Plaintiff thus fails to meet the causation element,

14   since he fails to submit any evidence that the prison pharmacy would have timely provided his

15   medication had Defendant Benak not discontinued his therapy.  In addition, Defendant Benak is

16   not responsible for or involved with ordering, stocking, or inventorying the pharmaceutical

17   supplies at SCC.

18           In sum, the record demonstrates that Plaintiff's HSV was repeatedly and appropriately

19   addressed by prison medical staff, including Defendant.  Plaintiff's mere disagreement with the

20   course of treatment chosen by Defendant does not support a claim under the Eighth Amendment,

21   and Defendant is entitled to summary judgment.  Snow, 681 F.3d 987-88.

22       **B.    Qualified Immunity**

23           Qualified immunity shields government officials from civil damages unless their conduct

24   violates "clearly established statutory or constitutional rights of which a reasonable person would

25   have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Qualified

26   immunity balances two important interests - the need to hold public officials accountable when

27   they exercise power irresponsibly and the need to shield officials from harassment, distraction, and

28   liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129

10

1  S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate

2  the law," <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

3         As the Court has found that no constitutional violation has occurred, it need not further

4  discuss the issue of qualified immunity.

5  **VI.     <u>Conclusion and Recommendation</u>**

6         For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's

7  motion for summary judgment, filed on March 13, 2014, be GRANTED, thus concluding this

8  action in its entirety.

9         These Findings and Recommendations will be submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within

11  **thirty (30) days** after being served with these Findings and Recommendations, the parties may

12  file written objections with the Court.   Local Rule 304(b).   The document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."   Any response to the

14  objections must be filed within **ten (10) days** from the date of service of the objections.   Local

15  Rule 304(d).   The parties are advised that failure to file objections within the specified time may

16  waive the right to appeal the District Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

17  1991).

18

19  IT IS SO ORDERED.

20     Dated:    **February 11, 2015**              /s/ *Dennis L. Beck*

21                                        UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

11